UNITED STATES v. BROMILEY.

(District Court, E. D. Pennsylvania. November 23, 1893.)

IMMIGRATION—CONTRACT LABORERS—NEW INDUSTRIES—WHAT ARE.
    The manufacture of fine lace curtains, which has been carried on in this country for only about three years, and is still confined to two or three establishments, and which was brought into existence by the McKinley tariff law, and will probably disappear if the protection thereby given is withdrawn, is a "new industry," within the exception to the prohibition of the contract labor law of 1885.

At Law. Trial of James Bromiley, treasurer and manager of the Eastlake Manufacturing Company, on the charge of violating the United States laws prohibiting the importation of contract labor from foreign countries. Verdict directed for defendant.

Ellery P. Ingham and Harvey K. Newitt, for the United States.
Maxwell Stevenson and George W. Shoemaker, for defendant.

BUTLER, District Judge, (charging jury, orally.) The defendant is indicted under the provisions of two statutes, one of them being that of 1885, and section 6 of the act of 1891. The only importance that attaches to the statute of 1891 is that it makes a violation of the former statute a misdemeanor, liable to indictment and punishment criminally. It is only necessary, therefore, that you shall know what are the terms of the statute of 1885, so far as relates to this case, to be able to apply the testimony and decide it. It is enacted that from and after the passage of this act it shall be unlawful for any person, company, partnership or corporation in any manner whatever to prepay the transportation, or in any way assist or encourage the importation or immigration of any alien or aliens, any foreigner or foreigners, into the United States, territories or District of Columbia, under contract or agreement, parol or special, express or implied, made previous to the importation or immigration of such aliens into this country. The terms of this section are very sweeping. They make it unlawful to assist foreigners to come to this country, either by paying their passage or by entering into agreement to employ them when they arrive here, or otherwise, but the statute is limited in its effect by subsequent provisions, which I will read:

"Provided, that this statute shall not apply or be so construed as to prevent any person or persons, partnership or corporation from engaging under contract or agreement skilled workmen in foreign countries to perform labor in the United States in or upon any new industry not previously established in the United States."

So that you see the effect of the statute is to prohibit generally the importation of foreigners into this country by assisting them to come, by paying their passage and entering into contract to employ them here, except where they are needed as skilled workmen in some industry that has not previously been established here, for which, therefore, the necessary employes cannot be obtained. The evidence makes some things very clear. This lace company commenced business in the spring or early part of 1892. They needed menders. What menders are, has been described to you. They are skilled workmen. The defendants were unable, as they tell you, to find such work people here. They sought to find them, and advertised. They inquired extensively but were unable to obtain workmen or workwomen competent for their work. Subsequently they did import the people, named in the indictment. They are not here on trial. The defendant is a Mr. Bromiley, who was the treasurer of the company and its manager. Now, if Mr. Bromiley as treasurer and manager of the company was a party to the employment of these people—engaged them—paying their passage; if he was a party to this participating in it actively, he is responsible just as is every other member of the company who participated. It is not even necessary that he should have alone done it personally—but if he entered into an arrangement with the other members of the company (I believe

he was a director) this is enough—He tells you what was done, —and that he is not more responsible than the others. The president tells you that he gave the orders for the employment of these people. If it was talked over by the directors and officers, and Mr. Bromiley was one of them, and advised it, he thus participated in it. The president was simply the agent in executing their order, and he is responsible for it if there is any responsibility, as well as Mr. Bromiley. Now, Mr. Bromiley himself tells you that he gave no order, that he did not authorize Mr. Clerk to write any letter, yet he says the business was talked over by the directors and officers of the company with him. Being superintendent of the mill, you will see that, almost of necessity, he would be consulted about it. Now, if he participated in it, if he entered into the resolution to bring these people over, then he is just as responsible as if he had been acting on his own account and had written the letter.

But the question in the case is a different one. Was this a new industry? Were these people brought here on account of it? If it was a new industry, and they were brought here on this account, neither the lace company nor Mr. Bromiley can be held responsible under the statute for what was done. Now, what is the evidence on this subject? At most it amounts to no more than that since 1890 there have been some eight or ten establishments manufacturing fine lace curtains. The witness who tells you that there are so many, personally knows but of two. He only knows of more by repute. No other witness before you knows of more than two, possibly three. Two at Wilkesbarre, and I think there was some intimation that there is one at Scranton. There is no evidence of any manufactory of fine lace in this country prior to 1890, unless it was in the one establishment at Wilkesbarre, and I am not sure that fine lace was manufactured there before 1890, or before the establishment of what is known as the McKinley tariff law. So that it is a new industry; it is still, perhaps, an experiment. I have no hesitancy in saying to you that in 1890, 1891 and 1892 it was a new industry. How successful it has been we do not know. It was a new industry not established, and, according to the testimony, is not established at this date. It is an industry in which several firms are struggling for existence, experimenting, hoping; and if the former condition of things had continued, no doubt it would have become established. The evidence warrants you in believing that it was started by the McKinley tariff law. If that is interfered with, it will probably disappear. Even the witnesses called by the government tell you that skilled menders, such as the defendant required and imported from England, could not have been employed in this country, unless, to use the expressive terms of the witnesses, they were stolen from other mills. I do not hesitate to say your verdict should be for the defendant.

A verdict of not guilty was accordingly rendered.